UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| STANLEY D. FENNER, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:03-cv-162 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| MARY BERGHUIS, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| | ) | |

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is represented by counsel in this action. Because Petitioner filed his habeas application after the enactment of the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA), the provisions of that law govern the scope of the Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001).

Petitioner is serving a term of 15 months to 15 years, imposed by the Calhoun County Circuit Court on April 12, 2001, after Petitioner pleaded *nolo contendere* to second-degree criminal sexual conduct (CSC II), MICH. COMP. LAWS § 750.502(c). In his "Amended Supplemental Brief In Support of Petition for Writ of Habeas Corpus" (docket #16), Petitioner raises five grounds for relief, as follows:

    I.      IS DEFENDANT ENTITLED TO HAVE HIS PLEA SET ASIDE BASED ON INVOLUNTARY PLEA WHERE DEFENDANT MADE A PLEA WITHOUT FULLY UNDERSTANDING THE CONSEQUENCES OF HIS PLEA?

    II.    DID DEFENSE COUNSEL CREATE A CONFLICT OF INTEREST WHEN HE PURSUED A POSITION WITH THE PROSECUTOR'S OFFICE AND

WAS HIRED BY THE PROSECUTOR WHILE DEFENDING THE DEFENDANT.

III.    WAS THE ATTORNEY/CLIENT RELATIONSHIP COMPROMISED BY DEFENSE COUNSEL'S INTEREST IN EMPLOYMENT WITH THE PROSECUTOR'S OFFICE?

IV.    IS DEFENDANT ENTITLED TO HAVE HIS PLEA SET ASIDE BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL; OR IN THE ALTERNATIVE, IS DEFENDANT ENTITLED TO A *GINTHER* HEARING TO DETERMINE THAT DETRIMENT TO DEFENDANT'S REPRESENTATION?

V.    WERE DEFENDANT'S *MIRANDA* RIGHTS VIOLATED AND THE DEFENDANT DENIED [AN] ATTORNEY WHEN THE DEFENDANT INQUIRED ABOUT ONE DURING QUESTIONING?

Respondent has filed an answer to the petition (docket #18) asserting that the petition should be denied. Upon review and applying the AEDPA standards, I find that Petitioner's grounds for habeas relief are without merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Trial Court Proceedings

Petitioner, a minister, was charged in the Calhoun County Circuit Court with CSC II for the alleged sexual touching of a nine-year-old girl, who was member of his congregation. Petitioner was charged in a separate case with sexually touching another young girl, who also was a member of the congregation. On or about August 16, 2000, Petitioner retained Daniel Buscher to represent him in the criminal proceedings. Buscher was hired by Calhoun County Chief Prosecutor John Hallacy on January 1, 2001, and placed in the position of Chief Assistant Prosecutor. Petitioner contends that he was not informed until after January 1, 2001, that Buscher would no longer be representing him. Sometime in January, Petitioner's representation was assumed by two attorneys

- 2 -

at Buscher's former office, Ronald Pichlik and Matt Glaser.  On March 5, 2001, the trial court conducted a hearing on Petitioner's pretrial motion to suppress statements he made to Detective Pickets of the Calhoun County Sheriff's Department on the ground that they were taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  At the conclusion of the hearing, the court denied Petitioner's motion to suppress.  (Suppression Hr'g Tr., docket #23.)  Later the same day, Petitioner pleaded *nolo contendere* to CSC II in exchange for the dismissal of the other case against Petitioner involving the alleged sexual touching of a second girl.  Petitioner was represented at the suppression and plea hearings by Ronald Pichlik.

During the video plea hearing, defense counsel provided the factual basis for the plea from the police report prepared by Detective Pickets of the Calhoun County Sheriff's Department.  The victim, who was under the age of 13, told an employee of the Family Independence Agency that Petitioner touched her "private area" on at least one occasion.  The victim specified that Petitioner touched the area between her legs over her clothing.  During a taped interview with Detective Pickets, Petitioner indicated that, on one occasion, he had incidental contact with the victim's thigh.  Defense counsel further offered a stipulation "that from the facts and circumstances of where the touching occurred, from the nature and description provided by the complainant to Detective Pickets, that the Court draw the reasonable inference that this was a touching of a sexual contact nature, or for a sexual purpose, as required under the Statute."  (Plea Tr., 7-8, docket #24.)  The court accepted the *nolo* plea.  On April 12, 2001, the trial court sentenced Petitioner to imprisonment of fifteen months to fifteen years.  (Sentencing Tr., 16, docket #25.)  Glaser represented Petitioner at the sentencing hearing.

After retaining his present counsel, Petitioner filed a motion to withdraw his plea, raising four claims of error. First, Petitioner claimed that his plea was involuntary because he was not aware of certain indirect consequences of his plea, including: (1) that the sentence recommended by the sentencing guidelines applied only to his minimum sentence; (2) that his conviction offense rendered him ineligible for Correction Center placement; (3) that he was ineligible for the Michigan Department of Corrections' sexual offender treatment; (4) that he was required to register as a sexual offender; (5) that sexual offenders are generally not paroled; and (6) that he was not eligible to receive "good time" credits. Second, Petitioner asserted ineffective assistance of counsel on the ground that counsel failed to adequately communicate or misrepresented the consequences of the guilty plea. Third, Petitioner claimed that he was entitled to withdraw his plea because he was actually innocent of the offense. Finally, Petitioner asserted a conflict of interest on the part of his first lawyer because, unbeknownst to Petitioner, Buscher was actively seeking employment with the Calhoun County Prosecutor's Office during his representation of Petitioner.

On January 28, 2002, the trial court held a hearing on Petitioner's motion to withdraw his plea. After hearing arguments from counsel, the trial court stated:

[L]ooking at the at the grounds here that have been asserted to set aside this plea after sentencing, I'll have to be the first to admit that the first thing I did and I think appropriately so, is to go back to the plea. To go back to the plea taking and the video transcript and see first whether there is some reversible error, something that was forgotten, wasn't addressed that should have been addressed during the plea taking and that certainly wasn't the case here. I'm satisfied that the plea taking was in conformity with the court rules. I am satisfied from what's placed on the record, the questions I asked the Defendant, the responses thereto, the agreement that was placed on the record, I'm satisfied that the Defendant entered his plea freely and voluntarily. Yes, there had been a pre-plea in this case, I know that and it's a part of the record and yes there was a recommendation which indicated that although the guidelines might reflect a prison sentence, that the agent who completed a pre-plea at that point at least was considering some type of probationary term with jail as a

- 4 -

part of it.  No guarantees though.  No one stood up at that plea taking and said, "Judge, we have a pre-plea, here's the agreement pursuant to that pre-plea and the Defendant is tendering this plea with the expectation that the sentence will be exactly as recommended in the pre-plea PSI."  It never happened and it was never a part of the agreement.  I indicated in this case, as I do in every case, "Defendant, do you understand that if you're convicted of this offense you could serve up to 15 years in prison," and he indicated that he did.  I didn't say, "If you're convicted of this you're going to do at least, ah, or not more than the minimum sentence," whatever that might be or whatever.  That's the way it is on the record and that's what happened. So, I'm not convinced from what's been presented to me that the plea was involuntary, that it was unknowing.  Like I said, it's on the record, it's clear as far as I'm concerned and I'm convinced that the Defendant freely, voluntarily and understandingly entered into the plea agreement and there was agreement here, which may have impacted - quite frankly I don't know - may have impacted the scoring and guidelines if, ah, by entering a plea to one count as opposed to two and what you have.  I'm not sure on that.

Other issues raised, the effective assistance of counsel, um, I'm not – I'm simply not convinced from what's been presented that there's been a base to grant the requested relief, set aside the plea and reset the case for trial nor am I convinced from what's been presented to me that there is an obligation on the part of the court, by way of this process, to conduct an evidentiary hearing.  As far as the conflict is concerned, it's addressed in pleadings and I – there was an issue that's not unique to this case, it was an issue that was a part of many cases in which Mr. Hallacy was first elected to office and when Mr. Busher was appointed as Chief Assistant and what have you. The manner in which it was addressed in this particular case I think meets the requirements of the law, the case law in particular, on point and the requirements of the law and if I had thought otherwise obviously back then we'd wouldn't have gone this route and it wouldn't have gone this route as far as Mr. Hallacy personally these cases since he's not supervised by Mr. Busher obviously though the process.  There are other issues raised which the innocence issue, I think, is without merit and I guess all I can say at this point is from what's before me on this motion to withdraw plea after sentencing, I'm not satisfied that the Defendant is entitled to the relief requested and the prosecution may prepare an order in conformity with that.

(Plea Withdrawal Tr., 15-16, docket #26.)  Accordingly, the trial court found that Petitioner's plea was knowing and voluntary.  The court specifically found that Petitioner was informed of his maximum sentence of fifteen years.  In addition, the court held that Petitioner was not denied the effective assistance of counsel in the plea proceedings or by Buscher's alleged conflict of interest.

## B.  Direct Appeal

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. His brief, which was filed by counsel on February 28, 2002, raised the same four issues presented in his motion to withdraw the guilty plea.  (*See* Def.-Appellant's Br. on Appeal, docket #27.)  The Michigan Court of Appeals issued an order on May 15, 2002, denying Petitioner's application "for lack of merit in the grounds presented."  (*See* 5/15/02 Mich. Ct. App. Ord., docket #27.)  Petitioner filed an application for leave to appeal to the Michigan Supreme Court raising the same four claims raised before and rejected by the lower courts.  By order entered January 31, 2003, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (*See* 1/31/03 Mich. Ord., docket #28.)

## C.  Habeas Corpus Proceedings

In his original habeas corpus petition (docket #1), Petitioner raised two claims.  First, he claimed that his plea was involuntary because he was not informed of certain indirect consequences of his plea.  Second, he asserted ineffective assistance of counsel for failing to inform of those consequences and misrepresenting the sentencing consequences.

Petitioner filed his "Addendum to Memorandum of Law in Support of Petition for Writ of Habeas Corpus" (docket #4), raising a third claim, asserting a conflict of interest on the part of his first lawyer, Daniel Buscher, because Buscher was seeking employment with the Calhoun County prosecutor's office during his representation of Petitioner.  Because Petitioner included an entirely new ground for habeas corpus relief, his "addendum" amounted to an amended petition. Pursuant to FED. R. CIV. P. 15(a), Petitioner was permitted to amend his complaint once before a responsive pleading was filed without seeking leave of the Court.

Next, Petitioner filed an "Amended Memorandum of Law in Support of Petition for Writ of Habeas Corpus" (docket #6) pertaining to the two grounds for habeas corpus relief raised in the original petition. Because the allegations set forth in the petition were insufficient to determine whether Petitioner had exhausted his state court remedies, the Court issued an order to show cause why the petition should not be dismissed for lack of exhaustion. In response, counsel provided an affidavit in which he averred that Petitioner's three grounds for habeas corpus relief were presented before the Michigan appellate courts on direct appeal. In light of counsel's averments, the Court issued an order to answer.

After the Court issued the order to answer, Petitioner filed a "Supplemental Brief in Support of Petition for Writ of Habeas Corpus" (docket #14) and an "Amended Supplemental Brief in Support of Petition for Writ of Habeas Corpus" (docket #16), in which he raised yet another new claim asserting a violation of his *Miranda* rights. Because Petitioner included an entirely new ground for habeas corpus relief, his "supplemental brief" constituted a second amended petition. Under FED. R. CIV. P. 15(a), Petitioner could only file a second amended petition by leave of the Court or by written consent of Respondent. Counsel is either unfamiliar with the Federal Rules of Civil Procedure or chose to ignore them. Moreover, the new *Miranda* claim presented in Petitioner's "supplemental" briefs is unexhausted. As set forth below, the Court may dismiss Petitioner's *Miranda* claim on the merits notwithstanding his failure to exhaust his state court remedies.

## AEDPA Standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271

F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This Court also may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the fact of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably

refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

## Discussion

### I.    Guilty Plea

In his first ground for habeas corpus relief, Petitioner contends that he is entitled to habeas corpus relief because his plea of nolo contendere was involuntary. A plea of guilty or nolo contendere is constitutionally valid if it is entered voluntarily and intelligently, as determined by the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). In order to find a constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, including the elements of the offenses for which he is pleading guilty. *See Bradshaw v. Stumpf*, 125 S. Ct. 2398, 2405 (2005); *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962). The

defendant also must understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493. Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970).

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328. Moreover, the AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and a petitioner may overcome this presumption only by presenting "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir.), *cert. denied* 125 S. Ct. 168 (2004). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

In this case, the record clearly supports the trial court's finding that Petitioner's plea was knowing and voluntary. Petitioner pleaded no contest to one count of CSC II in this case in exchange for the dismissal of another CSC case against Petitioner. (Plea Tr., 3, 5.) Petitioner

- 10 -

indicated that he understood the charge to which he was pleading and that the maximum penalty he could receive was fifteen years in prison. (Plea Tr., 5.) Petitioner was informed of and agreed to give up various rights as a consequence of his plea. (Plea Tr., 3-4.) Petitioner further acknowledged that no one forced, threatened or coerced him, or promised him anything else in order for him to enter the plea. (Plea Tr., 5-6.) Defense counsel provided an adequate factual basis from which to accept the plea. (Plea Tr., 6-8.) At the conclusion of the plea hearing, the trial court expressed its satisfaction that Petitioner was entering his plea "freely, voluntarily, and understandably." (Plea Tr., 9.)

Petitioner maintains that his plea was involuntary because he was not aware of certain indirect consequences of his plea, including: (1) that the sentence recommended by the guidelines applied only to his minimum sentence; (2) that his conviction offense rendered him ineligible for Correction Center placement; (3) that he was ineligible for the MDOC's sexual offender treatment; (4) that he was required to register as a sexual offender; (5) that sexual offenders are generally not paroled; and (6) that he was not eligible to receive "good time" credits. A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady*, 397 U.S. at 748. In general, a defendant is aware of the direct consequences of the plea if he is aware of the maximum and minimum (if any) that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991). While the defendant must be informed of the direct consequences of the plea, the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea. *King*, 17 F.3d at 153; *Brown v. Perini*, 718 F.2d 784, 788-89 (6th Cir. 1983).

Other than the issue of Petitioner's sentence, which will be addressed below, the matters cited by Petitioner clearly are "indirect" or "collateral" consequences of his plea. Petitioner cites non-binding decisions from a variety of state and federal courts in support of his claim. However, this Court may grant habeas corpus relief only where the state court proceeding involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). Petitioner has not cited, nor is this Court aware of, any clearly established Supreme Court authority requiring that Petitioner be informed of the collateral matters asserted in his petition. In fact, the Supreme Court has specifically held that a defendant need not be informed of his parole eligibility in order for his plea to be voluntary, let alone clearly collateral matters such as eligibility for prison programs. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary."); *see also McAdoo*, 365 F.3d at 495; *King,* 17 F.3d at 153-54; *Brown*, 718 F.2d at 784; *Armstrong v. Egeler*, 563 F.2d 796 (6th Cir. 1977).

Petitioner also contends that he was not informed that the sentence recommended by the guidelines applied only to his minimum sentence, which suggests that he was not informed of the maximum sentence that he faced in this case. As set forth above, a defendant's maximum sentence is a direct consequence of his plea for which he must be informed in order for his plea to be considered voluntary and knowing. *See King*, 17 F.3d at 154; *Hart*, 927 F.2d at 259. Despite his assertions, the trial court explicitly told Petitioner at the plea hearing that the maximum sentence he could receive was fifteen years in prison. (Plea Tr., 5.) Petitioner responded under oath at the plea hearing that he understood that he could receive a maximum sentence of fifteen years in prison.

(Plea Tr., 5). Petitioner further indicated that no one had promised him anything different than what the Court had stated. (Plea Tr.,` 5.) Petitioner, therefore, cannot successfully claim that he was unaware of the fifteen-year maximum sentence that he faced in this case. For the reasons set forth above, the trial court's finding that Petitioner knowingly and voluntarily entered his plea was not an unreasonable application of clearly established Supreme Court precedent.

## II.    Ineffective Assistance of Counsel:  Plea Proceedings

Petitioner also claims in Ground IV of his petition that he was denied the effective assistance of counsel in the plea proceedings. He asserts that counsel was ineffective for failing to inform him of the collateral consequences of his plea. Petitioner further alleges that his attorneys misled him concerning his sentence by advising him that the worst thing that would happen to Petitioner if he pleaded guilty was ten months of jail time and probation. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 687. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

- 13 -

Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court reviewed a habeas corpus claim that petitioner's guilty plea was involuntary by reason of ineffective assistance of counsel because his attorney had misinformed him as to his parole eligibility date. The Supreme Court left open the question of whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may satisfy the first prong of the *Strickland* test. Instead, the Court found that the petitioner's allegations were insufficient to satisfy *Strickland*'s prejudice requirement. *Id.* at 60. In order to satisfy the "prejudice" requirement in a plea agreement context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58-59.

In a recent case, *McAdoo v. Elo*, 365 F.3d 487 (6th Cir. 2004), the Sixth Circuit considered whether counsel was ineffective for providing the petitioner with gross misinformation about his potential parole. The petitioner pleaded guilty to one count of second degree-murder and two counts of assault with intent to commit murder, for which he was sentenced to three concurrent terms of life imprisonment with the possibility of parole. The charges arose from the stabbing death of the petitioner's wife and the stabbing of two of his daughters. While Petitioner knew that he was agreeing to life sentences, he claimed that his counsel and the trial court provided misinformation about the consequences of a life sentence under Michigan law. *Id.* at 494. The Court held that giving erroneous advice about parole may constitute deficient performance, stating:

> Considerable case law supports a determination that giving erroneous advice about parole may constitute deficient performance. Affirmative misstatements about parole possibilities are more objectively unreasonable than failure to inform the defendant

about the parole possibilities. *James*, 56 F.3d at 667 (noting that "this Court and others have recognized that affirmatively erroneous advice of counsel as to parole procedure is much more objectively unreasonable than would be a failure to inform of parole consequences"). When defense counsel grossly misinforms a defendant about details of parole and the defendant relies on that misinformation, the defendant may have been deprived of his constitutional right to counsel. *See Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir.1979). In *Meyers v. Gillis*, 142 F.3d 664 (3d Cir.1998), a habeas petitioner argued that his counsel was ineffective for giving him incorrect advice about parole eligibility. The Third Circuit granted habeas relief, stating that "Meyers did not realize he was, in all reality, pleading guilty to an offense that did not allow him to receive parole in the future." *Id.* The court noted that, while a defendant does not have a constitutional right to be provided with parole eligibility information prior to entering a plea, any information that is provided by defense counsel must be accurate. *Id.* at 667 n.2.

*McAdoo*, 365 F.3d at 499. The Court held that counsel may have rendered deficient performance if he, in fact, told the petitioner that he would be released after twenty years. Nevertheless, the Court found that the petitioner failed to satisfy *Strickland*'s prejudice prong. By pleading guilty, the petitioner avoided the possibility of a first-degree murder conviction that carried a term of life imprisonment without the possibility of parole. The petitioner also stated at his re-sentencing hearing that he did not want his children to be subjected to a trial. *Id.* at 499-500. Accordingly, the Court concluded that the petitioner could not establish a reasonable probability that he would not have pleaded guilty in the absence of erroneous advice from his lawyer. *Id.* at 499.

Unlike *McAdoo*, Petitioner does not claim that counsel affirmatively provided him with material misinformation regarding his chances for parole. Rather, Petitioner claims that counsel simply failed to inform him of various collateral consequences of his plea, including his parole possibilities. Counsel's alleged failure to inform Petitioner of the collateral consequence of his guilty plea did not constitute deficient performance. *See United States v. Hall*, No. 86-3588, 1987 WL 37001, at *2 (6th Cir. April 10, 1987) ("Counsel's failure to inform defendant of every collateral consequence of his guilty plea is not sufficient ground for finding ineffective assistance of counsel.")

Even assuming defense counsel was ineffective for failing to inform Petitioner regarding the collateral consequences of his plea or for misinforming him regarding his sentence, Petitioner cannot establish prejudice.  As discussed above, Petitioner acknowledged under oath at the plea hearing that he could be sentenced to up to fifteen years in prison.  After being informed by the trial court of the maximum penalty, Petitioner went forward with his plea without comment or question on the subject of his sentence.  Moreover, by pleading guilty, Petitioner avoided prosecution in another criminal sexual conduct case.  Petitioner, therefore, cannot establish that, but for counsel's performance, he would not have pleaded guilty. Consequently, the trial court's finding that Petitioner was not denied the effective assistance of counsel in the plea proceedings was not unreasonable.

As alternative relief, Petitioner seeks a hearing on his claim of ineffective assistance of counsel.  Under Michigan law, a defendant may request a hearing pursuant to *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), in order to further develop a claim of ineffective assistance of counsel.  In his motion to withdraw his guilty plea, Petitioner sought an evidentiary hearing on his claim of ineffective assistance of counsel.  The trial court denied the request because it was not convinced "from what's been presented" that such a hearing was warranted.  (Plea Withdrawal Tr., 16.)  To the extent Petitioner's request can be construed as a motion for an evidentiary hearing in this Court, the AEDPA provides for evidentiary hearings only in extremely limited circumstances.  *See* 28 U.S.C. § 2254(e)(2)[1]; *see also Greer v. Mitchell*, 264 F.3d 663, 680 (6th Cir. 2004).  Even if

---

[1]The statute provides that if the petitioner has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

- 16 -

Petitioner could meet the statutory requirements for an evidentiary hearing, I agree with the trial court that, in light of the record, a hearing on Petitioner's claim of ineffective assistance of counsel would not affect the outcome of this case.  As discussed above, the record supports a finding that Petitioner entered his plea knowingly and intelligently and that he received constitutionally sufficient legal representation in the plea proceedings.

### III.    Ineffective Assistance of Counsel:  Conflict of Interest

In his second and third grounds for relief, Petitioner claims that he was denied the effective assistance of counsel due to a conflict of interest that arose when Daniel Buscher, while defending Petitioner against criminal charges in Calhoun County, was pursuing employment with the Calhoun County Prosecutor's Office.  While a showing of prejudice is generally required to establish a Sixth Amendment violation under *Strickland*, the Supreme Court has set forth three situations in which prejudice will be presumed.  First, the court presumes prejudice when there is an actual or constructive denial of the assistance of counsel.  *Strickland*, 466 U.S. at 692.  "Various kinds of state interference with counsel's assistance" are also presumed to result in prejudice.  *Id.* (citing *United States v. Cronic*, 466 U.S. 648, 659 (1984)).  The court further recognized that a limited presumption of prejudice may arise in cases where the lawyer's performance is adversely affected by a conflict of interest.  *Id.*

With regard to the conflict of interest scenario, the *Strickland* Court referred to its earlier decision in *Cuyler v. Sullivan*, 446 U.S. 335 (1980).  In that case, Sullivan and his two co-defendants were represented by the same two privately retained attorneys throughout the state criminal proceedings against them.  The Supreme Court held that the mere possibility of a conflict of interest was insufficient to establish a Sixth Amendment violation.  *Sullivan,* 466 U.S. at 350.  "In

- 17 -

order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 350.  The *Sullivan* standard grew out of the Supreme Court's prior recognition that when "a trial court improperly requires joint representation over timely objection[,]" an effective assistance of counsel is presumed.  *Holloway v. Arkansas*, 435 U.S. 475, 488 (1978) (citing *Glasser v. United States*, 315 U.S. 60 (1942)).  The *Holloway* Court held that where counsel is representing multiple defendants at trial, and timely objections in open court to the joint representation but is nonetheless forced to represent co-defendants, an automatic reversal is required unless the trial court has determined that there is no conflict of interest.  435 U.S. at 488.  In *Sullivan*, the Supreme Court declined to extend *Holloway's* automatic reversal rule to cases in which there was no objection made to the joint  representation at trial.  Instead, where counsel engages in joint representation and makes no objection to the joint representation, and nothing reasonably indicates to the trial court that a conflict exists, a defendant asserting ineffective assistance of counsel must demonstrate that an actual conflict existed that affected his counsel's performance.  *Sullivan*, 446 U.S. at 348.

More recently, in *Mickens v. Taylor*, 535 U.S. 162 (2002), the Supreme Court addressed a situation in which defense counsel represented the victim of the defendant's murder in an earlier, different proceeding.  The case was argued under the assumption that the *Sullivan* standard, requiring a showing of defective performance but not requiring a showing of prejudice, was applicable to cases of multiple and successive representation. The Court held that the judge's failure to inquire into a potential conflict of interest did not itself relieve the defendant of the burden of showing that a conflict of interest adversely affected defendant's representation.  Accordingly, the Court did not decide whether, when an actual conflict of interest is shown, the *Sullivan* standard

applied to successive representation cases. Of major significance to the present case was the Supreme Court's express limitation on *Sullivan*. The Court opined that *Sullivan* had been applied by courts of appeals "unblinkingly," not only to successive representation cases, but in a variety of other cases involving alleged conflicts of interest. *Mickens*, 535 U.S. at 174. The Court further noted that *Holloway* and *Sullivan* had emphasized the high probability of prejudice arising from multiple concurrent representations and the difficulty of proving that prejudice, but stressed that "[n]ot all attorney conflicts present comparable difficulties." *Id.* at 175. In conclusion, the Court stated that whether *Sullivan* should be extended to successive representation cases "remains, as far as the jurisprudence of this Court is concerned, an open question." *Id.* at 176.

In *Smith v. Hofbauer*, 312 F.3d 809 (6th Cir. 2002), the Sixth Circuit addressed a situation in which an attorney representing the defendant was under an indictment for drug charges in the same county as the defendant was being tried. Neither the judge nor the prosecuting attorney was the same, and the state court found no evidence to suggest that counsel had lessened his defense as the result of his pending felony charge. *Id* at 812. Analyzing the *Mickens* dicta, the Sixth Circuit held that it is not clearly established by the Supreme Court for purposes of the AEDPA that the *Sullivan* standard applies to conflicts other than dual representation. *Id.* at 818. The Court stated:

> Because the question of whether *Sullivan*'s lessened standard of proof for a claim of ineffective assistance of counsel based upon a attorney's conflict of interest for anything other than joint representation remains an "open question" in the jurisprudence of the Supreme Court, *Mickens*, 122 S. Ct. at 1246, and in fact was an open question at the time Petitioner's case was heard, Petitioner's claim fails because it is not based upon clearly established Supreme Court precedent as mandated by the AEDPA.

*Smith*, 312 F.3d at 817. As a result, the Sixth Circuit held in *Smith* that a court must evaluate any conflict of interest situation other than dual representation under the standards of *Strickland* rather than *Sullivan*.

- 19 -

The Sixth Circuit has continued to recognize that *Sullivan* applies only to joint representation and that the Supreme Court has yet to extend *Sullivan*'s reach to any other type of conflict. *See Lordi v. Ishee*, 384 F.3d 189 (6th Cir. 2004) (*Sullivan*'s presumed prejudice standard for ineffectiveness claims based on a conflict of interest is inapplicable to cases of successive representation.), *cert. denied*, 126 S. Ct. 355 (2005); *Moss v. United States*, 323 F.3d 445, 460 (6th Cir. 2003); *Renusch v. Berghuis*, No. 01-2373, 2003 WL 22128709, at *6 (6th Cir. Sept. 12, 2003) ("[I]t is now manifest that a refusal to extend [*Sullivan*] beyond multiple representation cases is not unreasonable"). Most recently, in *Whiting v. Burt,* 395 F.3d 602, 619 (6th Cir. 2005), the Sixth Circuit held that the district court erred in applying the *Sullivan* standard to the petitioner's claim of ineffective assistance of appellate counsel based on an alleged conflict of interest when the same counsel represents the defendant at both trial and on appeal.

The instant case does not involve joint representation. Thus, *Strickland* is the proper standard for determining whether Buscher's alleged conflict of interest rendered his performance constitutionally deficient. In order to satisfy the prejudice prong of the *Strickland* test, the Court instructed "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The prejudice prong "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Therefore, the prejudice inquiry must not focus solely on mere outcome determination; attention must be given to "whether the result of the proceeding was fundamentally unfair or unreliable." *Id.* at 369.

- 20 -

Petitioner does not allege how he was actually prejudiced by Buscher's pursuit and acceptance of a position at the Calhoun County Prosecutor's Office. Rather, Petitioner appears to argue that prejudice should be presumed. For example, Petitioner asserts that Petitioner was prejudiced by "the unfair possibility that the prosecution and the defense counsel could have been sharing private comminicota [sic, should be "communications"] with each other." (Amended Supp. Br., 11, docket #16.) Because the *Strickland* standard applies in this case, Petitioner must show actual prejudice resulting from Buscher's alleged conflict of interest. Petitioner's mere speculation that Buscher could have divulged confidential attorney-client communications to the prosecutor in Petitioner's case does not establish actual prejudice. Buscher withdrew from Petitioner's case approximately two months before Petitioner pleaded guilty. Attorneys Pichlik and Glaser represented Petitioner on his motion to suppress, in the plea proceedings and at sentencing.[2] Petitioner, therefore, has failed to demonstrate actual prejudice resulting from Buscher's association with the prosecutor's office during his representation of Petitioner. Accordingly, the state court's conclusion that Petitioner was not denied the effective assistance of counsel as a result of the alleged conflict of interest was not an unreasonable application of *Strickland*.[3]

---

[2]Petitioner asserts that he was prejudiced by Buscher's acceptance of employment at the prosecutor's office because Petitioner's replacement counsel rendered ineffective assistance. Buscher cannot be found ineffective based upon the alleged deficient performance of another lawyer. Moreover, I concluded above that Petitioner was not denied the effective assistance of counsel in the plea proceedings.

[3]In his Amended Supplemental Brief, Petitioner argues "What is more convincing and compelling for this Court to grant and issue [sic] Writ mandating a reversal and remand to allow the Defendant to withdraw his plea is that Matt Glaser, the third and last attorney is thought to be married to a secretary who works for the Calhoun County Prosecutor's Office." (Amended Supp. Brief, 7-8, docket #16.) To the extent Petitioner seeks to raise an additional claim of ineffective assistance of counsel arising from Glaser's alleged conflict of interest, the claim is unexhausted. Moreover, Petitioner does not attempt to assert how he was actually prejudiced by Glaser's wife's alleged employment as a secretary at the prosecutor's office. Accordingly, Petitioner's claim is wholly meritless.

### IV.     Miranda Violation

Petitioner claims in Ground V of his petition that his statements to Detective Pickets were taken in violation of his *Miranda* rights.  Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

While Plaintiff raised the *Miranda* issue in his motion to suppress filed in the trial court, he did not present it in his applications for leave to appeal in the Michigan Appellate Courts. Because Plaintiff failed to raise his claims at all levels of the state appellate system, he failed to satisfy the exhaustion requirement.  *See O'Sullivan*, 526 U.S. at 845.  Petitioner has at least one available procedure by which to raise the issues he has presented in this application.  He may file a motion for relief from judgment under M.C.R. 6.500 *et. seq*.  However, this Court may deny the petition on the merits notwithstanding Petitioner's failure to exhaust the remedies available to him in the state courts.  *See* 28 U.S.C. § 2254(b)(2).

The unconditional *nolo contendere* plea to the charge of second-degree criminal sexual conduct in the instant case waived Petitioner's *Miranda* claim. An unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Kowalak v. United States*, 645 F.2d 534, 537 (6th Cir. 1981). "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. A *nolo contendere* plea stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36 (1970); *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982).

An alleged *Miranda* violation is not a jurisdictional issue and is waived by a guilty plea. *Reed v. Henderson*, 385 F.2d 995, 996 (6th Cir. 1967); *accord, Sutton v. Blackwell*, 327 F. Supp. 2d 477, 486 (D.N.J. 2004). Accordingly, Petitioner waived his right to challenge this alleged error by pleading *nolo contendere*.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.


Dated:  January 11, 2006                     /s/  Joseph G. Scoville_____
                                              United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).